**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JUAN CARLOS PERAZA,        )
                           )
              Plaintiff,   )
                           )
            v.           )     1:09CV936
                           )
BANK OF AMERICA,         )
                           )
              Defendant.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant's Motion to Dismiss (Docket Entry 7). (<u>See</u> Docket Entry dated Feb. 25, 2010.) For the reasons that follow, the Court should deny the instant motion without prejudice to re-filing after Plaintiff has an opportunity to amend his complaint to clarify his claims.

<u>BACKGROUND</u>

Plaintiff filed a pro se form Complaint in this Court, which – if viewed through the forgiving lens of liberal construction provided to pro se litigants, see <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (reiterating that "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotation marks omitted)) – alleges that Defendant wrongfully terminated his employment and that he suffered "harassment" and/or "discriminatory" treatment while working for Defendant. (Docket Entry 3 at 2-4.) The Complaint does not make clear the nature of

the cause(s) of action that Plaintiff wishes to pursue. (See id.) Plaintiff, however, did attach to the Complaint a copy of a Dismissal and Notice of Rights form directed to him from the Equal Employment Opportunity Commission ("EEOC") (id. at 6), which suggests that Plaintiff seeks to bring a claim for employment discrimination (as to which he had to exhaust EEOC remedies).

Certain aspects of the Complaint also support this view; for example, Plaintiff complains that:

1) on one occasion, "a supervisor of white race" stood by and stared at Plaintiff while an "African-American employee asked [Plaintiff and two female co-workers] 'what are you doing here? You came from Indians!'" (id. at 2); and

2) Luisa Vargas (who, it appears from other allegations in the Complaint, acted as Plaintiff's supervisor during his employment with Defendant) "told [Plaintiff] in [sic] different occasions that people from Latin America and Mexico are ignorants [sic] and she preferred to work with North American (anglos) becose [sic] of it" (id. at 3).

The Complaint also contains other allegations that appear to have nothing to do with discrimination or harassment based on prohibited factors; for example, Plaintiff complains about alleged incidents in which:

1) Ms. Vargas yelled at him for reporting an injury he suffered to an insurance company (id. at 3); and

2) "Erick Wilson, Supervisor of Quality Monitors, . . . star[ed] at [Plaintiff] with an angry face and said something

-2-

between his teeth, just moving his lips like cursing" after Plaintiff attempted to engage another employee in a humorous exchange (id. at 4).

Defendant thereafter filed the instant motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry 7.) In support of said motion, Defendant argued that the Complaint failed to provide it fair notice of Plaintiff's claim(s). (See Docket Entry 8 at 3.) Alternatively, Defendant contended that, to the extent Plaintiff alleged a claim for "wrongful discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq., or any other federal or state civil rights or employment-related statute," he failed to present sufficient facts to state a plausible claim for relief. (Id. at 4 (internal emphasis omitted).) More specifically, according to Defendant, the Complaint acknowledged the existence of non-discriminatory, performance-related bases for Plaintiff's firing and "fail[ed] to identify any similarly-situated associate outside of his protected class who received more favorable treatment . . . [such that] [P]laintiff cannot establish a *prima facie* case of discrimination." (Id. at 4-5.) Finally, Defendant asserted that "[P]laintiff also can not state a hostile work environment 'harassment' claim under Title VII or any other federal or state civil rights or employment-related statute or cause of action." (Id. at 5 (internal emphasis omitted).) In this regard, Defendant cited Plaintiff's failure "to identify any protected class to which he belongs, . . . to describe

-3-

any conduct that was directed at him 'because of' his membership in a protected class, . . . to allege that [Defendant] had any notice of any alleged wrongful conduct[,] . . . [and] to describe any conduct which is sufficiently severe or pervasive so as to alter the conditions of his employment." (Id. at 5-6.)

In his response to Defendant's instant motion, Plaintiff made allegations that had not appeared in his Complaint, most of which lack any readily-apparent connection to cognizable claims for employment discrimination based on prohibited factors. (Docket Entry 16.)[1]  For example, Plaintiff presents a number of explanations as to why he and other employees in his department had problems meeting Defendant's various job performance standards, such as matters arising from the "mortgage crisis" and the nature of their customer-base, as well as details regarding resistance by Defendant's management to changes Plaintiff and other employees wished to make regarding Defendant's business practices. (See Docket Entry 16 at 2-3 and Attach. 2, pp. 11-12.)[2]

---

[1] According to its cover page, Plaintiff's response consists of four different parts: 1) "Statement of Reason for Plaintiff's Opposition"; 2) "Evidence in rebuttal and Copies from Original Documents"; 3) "Statement of the Case and Relevant Facts"; and 4) "Conclusion." (Docket Entry 16 at 1.) In the CM/ECF docketing system, the cover page and the first part appear as the main document with the remaining parts included in two attachments.

[2] Many parts of the filing appear to address not Defendant's instant motion, but instead matters from the administrative process before the EEOC. (See, e.g., Docket Entry 16 at 2 ("In the Respondent' [sic] Initial Position (document sent from Bank of America to EEOC), they say in shameless manner, that the other Associates on MS. [sic] Vargas' team consistently met the 84% minimum score in Quality Monitors (QM) in 2008."), 3 (referencing additional matters in said "initial position statement").)

Mixed in with the foregoing, apparently immaterial matters, however, Plaintiff did set forth information pertinent to an understanding of his apparent employment discrimination claim(s), including, most notably that:

1) after he "was fired [he filed a] charge of Discrimination . . . with the EEOC" (id. at 2);

2) his "native country [is] El Salvador (id. at Attach. 2, p. 9);

3) "Luisa Vargas was the person in charge of [Plaintiff's] Department and the [sic] responsible for the abuses and intimidations, but there were more people in the management involved in the aggression against [him], and the tolerance regarding the abuses against Hispanic employees in [Plaintiff's] Department" (id. at Attach. 2, p. 14);

4) the team on which Plaintiff worked "was trying to be a part of Bank of America's family, but unfortunately, what we received it [sic] was a [sic] HARASSMENT/HOSTILE WORK ENVIRONMENT based in intimidation and slurs" (id.); and

5) "Title VII of the Civil Right [sic] Act of 1967 [sic] prohibits employers from discriminating against individuals because [sic] their Race, National Origen [sic] and Retaliation" (id. (internal emphasis omitted)).

Defendant filed a reply brief arguing that, even if the added details from Plaintiff's response constituted part of his Complaint, Plaintiff still failed to state a claim. (Docket Entry 18.)

<u>DISCUSSION</u>

Under Rule 12(b)(6), a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[3]

---

[3] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, <u>Erickson</u>, 551 U.S. at 94 (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying <u>Twombly</u> standard in dismissing pro se complaint). <u>Accord</u> <u>Atherton v. District of Columbia Off. of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting <u>Erickson</u>, 551 U.S. at 94, and <u>Iqbal</u>, 129 S. Ct. at 1950, respectively)).

As set forth above in the Background section, it appears that Plaintiff seeks to pursue a Title VII claim for discriminatory termination of employment based on his race/ethnicity (Hispanic) and/or national origin (El Salvador). To maintain such a claim, Plaintiff must allege facts sufficient to support a <u>reasonable</u> inference that Defendant took adverse employment action against him based on his race/ethnicity and/or national origin. Plaintiff's Complaint sets out a fairly detailed account of some of his experiences while working for Defendant; however, this account affords very little factual information, even if accepted as true, to permit a <u>reasonable</u> fact-finder to determine that Plaintiff is not only an individual of Hispanic race/ethnicity from El Salvador who was fired (or otherwise subjected to adverse employment action) by Defendant, but also an individual of Hispanic race/ethnicity from El Salvador who was fired (or otherwise subjected to adverse employment action) by Defendant <u>because of his race/ethnicity and/or national origin</u>.

Without such facts, Plaintiff's discrimination claim cannot proceed. <u>See</u> <u>Carpenter v. County Sch. Bd., Fairfax County</u>, 107 Fed. Appx. 351, 351-52 (4th Cir. 2004) ("We find [the plaintiff] failed to allege sufficient facts in support of his [discrimination] claim to defeat a motion to dismiss. [The plaintiff] did nothing more than state that he was in a protected class and that he suffered adverse employment decisions."); <u>see also</u> <u>Iqbal</u>, 129 S. Ct. at 1948 ("Where the claim is invidious discrimination . . . the plaintiff must plead and prove that the

defendant acted with discriminatory purpose. . . . [P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group. . . . [T]o state a claim based on [invidious discrimination], [a plaintiff] must plead sufficient factual matter to show that [defendants] adopted and implemented the [allegedly discriminatory] policies at issue not for a neutral, [non-race-based] reason but for the purpose of discriminating on account of race . . . ." (internal brackets, citations, and quotation marks omitted)).

Moreover, the United States Court of Appeals for the Fourth Circuit has held that, even at the pleading stage, a plaintiff cannot rely on mere speculation that a prohibited factor caused an adverse action. See Jordan v. Alternative Res. Corp., 458 F.3d 332, 346-47 (4th Cir. 2006) ("In [Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)], the plaintiff pleaded that her employer discriminated against her because of her race and sex. Yet she supported this allegation with a story . . . which did not seem to have anything to do with gender [or] race . . . . Construing the *Bass* plaintiff's complaint in her favor, we were unable to determine how her story involved any discrimination because of her race and sex. [Here, the plaintiff's] count for a § 1981 discrimination claim is similarly deficient. The count conclusorily states that the defendants violated § 1981 because race was a motivating factor in his termination. Yet the 24

paragraphs of facts that are made part of that count provide no support for the violation, just as was the case in *Bass*. Like the district court, we cannot discern in his claim any way that [the plaintiff's] race factored into his termination." (internal citations and quotation marks omitted)); see also Dolgaleva v. Virginia Beach City Pub. Sch., No. 08-1515, 2010 WL 325957, at *6 (4th Cir. Jan. 29, 2010) (unpublished) (stating that plaintiff cannot rely on "unwarranted inferences" or "unreasonable conclusions" to avoid dismissal under Rule 12(b)(6)).[4]

Instead, to establish that an adverse employment action resulted from prohibited discrimination, a "Title VII [plaintiff may proceed] in one of two ways. First, he may present direct evidence of his superiors' discriminatory intent. Second, he may attempt to satisfy the test specified in McDonnell Douglas Corp. v.

---

[4] The decision in Barksdale v. Nationwide Mut. Ins. Co., No. 4:06CV43, 2007 WL 200955 (W.D. Va. Jan. 23, 2007) (unpublished), further illuminates the issue:

In this case, [the plaintiff] has only stated cursory allegations that [the defendant] discriminated against her and intended to do so. She has failed to allege any facts that might support an inference of purposeful discrimination or that she was treated differently than any similarly situated [person].

The Fourth Circuit's holding in *Bass* is analogous to this case. In *Bass*, the court held that a hostile work environment claim failed to state a cause of action. In that case, the complaint "was full of problems the plaintiff experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment." Like the plaintiff in *Bass*, [the plaintiff here] has plead [sic] a sufficiently detailed account of her difficulties with [the defendant]. However, she has not pled any facts which link those difficulties with racial discrimination. Therefore, her claim is not sufficient to survive a 12(b)(6) motion.

Id. at *3 (quoting Bass, 324 F.3d at 765) (emphasis added).

-9-

Green, 411 U.S. 792, 802 (1973), which allows him to raise an inference of discriminatory intent by showing that he was treated worse than similarly situated employees of other races." Sterling v. Tenet, 416 F.3d 338, 345 (2005) (internal parallel citations omitted).[5]

In this case, Plaintiff has not alleged even in summary fashion that he "was treated differently than any similarly situated" employee outside his protected class, much less pleaded underlying "facts" to substantiate such a contention.[6] Plaintiff, however, has alleged that his supervisor, Ms. Vargas, "told [Plaintiff] in [sic] different occasions that people from Latin America [which he is] and Mexico are ignorants [sic] and she preferred to work with North American (anglos) [which he is not] becose [sic] of it" (Docket Entry 3 at 3). An allegation of that

---

[5] If a plaintiff makes out a prima facie case under McDonnell Douglas, the defendant may "respond by presenting a legitimate, nondiscriminatory reason for [the adverse employment] actions. The burden would finally shift back to [the plaintiff] to demonstrate that this reason was a pretext for discrimination." Sterling, 416 F.3d at 345 (internal citation omitted).

[6] The Fourth Circuit has indicated that plaintiffs who simply allege in conclusory terms that they suffered treatment different from similarly situated persons in other demographic groups fail to state a claim unless such plaintiffs set forth underlying factual allegations to undergird their general assertions. See, e.g., Francis v. Giacomelli, 588 F.3d 186, 195-96 (4th Cir. 2009) (describing African-American plaintiff's allegation that "defendants have never initiated or undertaken the actions of terminating employment and physically removing [white] employee[s]" as "conclusory and insufficient" and "nothing more than the sort of unadorned allegations of wrongdoing to which Twombly and Iqbal are directed" in ruling that plaintiff failed to "state a plausible claim for relief"); Jordan, 458 F.3d at 347 (holding that African-American plaintiff's "new allegations" that, "in firing him, his managers treated him more harshly than they did white employees," even if considered part of complaint, "are not fair inferences inasmuch as they are mere speculation and argument . . . that do not provide support for a statement of claim" in "affirm[ing] the district court's order dismissing [plaintiff's] discrimination claim").

sort, if proven, might support an inference that purposeful discrimination served as the impetus for adverse employment actions taken against Plaintiff by or at the behest of said supervisor.[7] As a result, Plaintiff might have a basis to proceed under the "direct evidence" approach, even if (as Defendant argues (see Docket Entry 8 at 5)) he has failed to allege facts sufficient to make out a prima facie case under the McDonnell Douglas scheme. See generally Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002) ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.").

Under these circumstances and given Plaintiff's status as a pro se litigant, the Court should not dismiss his action at this time, but instead should afford Plaintiff an opportunity to amend his Complaint in a manner that clarifies the factual allegations on which he bases his Title VII wrongful termination claim. See, e.g., Threat v. Potter, No. 3:05CV116, 2006 WL 1582393, at *1 (W.D.N.C. June 2, 2006) (unpublished) ("Dismissal of the Complaint could be warranted under these circumstances. However, in its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than

---

[7] What, if any, adverse employment actions, up to and including his firing, Plaintiff contends Ms. Vargas caused remains unclear.

-11-

to order a dismissal at this early stage of the action."). In that amendment, Plaintiff also should make clear whether he seeks to state any additional causes of action, such as for discrimination in the form of a hostile work environment.[8]  Further, the order directing Plaintiff to file an amended complaint should instruct him to exclude from his revised pleading any matters that do not relate to his claims, such as allegations regarding general work-place conflicts or the manner in which Defendant operated its business unrelated to discrimination based on prohibited factors. Once Plaintiff has had a chance to amend his Complaint, Defendant should have leave to challenge the sufficiency of Plaintiff's allegations. <u>See, e.g.</u>, <u>id.</u> ("Depending on the nature of any deficiencies in the Amended Complaint, the Defendant may bring this motion [to dismiss] again, if warranted.").

## CONCLUSION

The undersigned Magistrate Judge recognizes that the convoluted presentation by Plaintiff thus far makes it difficult, if not impossible, for Defendant to formulate an appropriate defense to this action. However, because Plaintiff has proceeded

---

[8] At this point, Plaintiff has done little more than invoke the words "harassment" and "hostile work environment."  To the extent he wishes to pursue a cause of action of this sort, Plaintiff should take note that Title VII limits such claims to situations involving a "'workplace permeated with discriminatory [e.g., racially-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Jordan</u>, 458 F.3d at 339 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  "'[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"  <u>Id.</u> (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).

pro se and has lodged some serious allegations that his supervisor expressed employment-related bias against persons of his race/ ethnicity and national origin and that he then suffered adverse employment action, the Court should refrain from dismissing this case at this point. Instead, the Court should permit Plaintiff to amend his Complaint, after which time Defendant should have the right to re-litigate the Rule 12(b)(6) issue, if appropriate.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 7) be **DENIED**, but without prejudice to re-filing after Plaintiff has an opportunity to amend his Complaint.

**IT IS FURTHER RECOMMENDED** that Plaintiff be **ORDERED** to file an amended complaint clarifying the nature of and basis for his claims and excluding immaterial allegations within 14 days of the date of the Court's Order denying Defendant's instant motion without prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

August 27, 2010